SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
JAMES C. SHAH (SBN 260435)
ROSE F. LUZON (SBN 221544)
One California Street, Suite 900
San Francisco, CA 94111
Phone: 415-429-5272
Fax: 866-300-7367
jshah@sfmslaw.com
rluzon@sfmslaw.com

CHIMICLES & TIKELLIS LLP
STEVEN A. SCHWARTZ
TIMOTHY N. MATHEWS
CHRISTINA D. SALER
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-8500

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| BRANTON LEA, individually and on behalf of all others similarly situated, | Case No: _____ |
| Plaintiff, | **CLASS ACTION** |
| vs. | **CLASS ACTION COMPLAINT** |
| LINKEDIN CORPORATION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff, Branton Lea ("Plaintiff"), by and through his attorneys, brings this action, on behalf of himself and others similarly situated, against Defendant, LinkedIn Corporation ("Defendant" or "LinkedIn"), and, except for information

based on his own personal knowledge, alleges, on information and belief based on the investigation conducted by his counsel, as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1. Plaintiff brings this action to remedy violations of the California Common Law Right of Publicity and California Unfair Competition Law in connection with LinkedIn's scheme to grow its business through the misappropriation of its members' names and likeness.

2. LinkedIn is a business-oriented social networking service that enables its members to make "connections" with other members for the purported goal of advancing members' professional pursuits. As of October 2014, LinkedIn reported that it is "the world's largest professional network on the Internet . . . hav[ing] more than 300 million members in over 200 countries and territories" and "[t]hrough [its] propriety platform, members are able to create, manage and share their professional identity online, build and engage with their professional network, access shared knowledge and insights, and find business opportunities, enabling them to be more productive and successful."[1]

3. LinkedIn's usefulness or value is, therefore, only as good as the breadth and relevance of its member network. Indeed, LinkedIn acknowledges that its "future growth will depend, in part, on our ability to continue to increase our member base and create value for our members"[2] because increased membership "will result in increased sales of our Talent Solutions, Marketing Solutions and Premium Subscriptions, as customers will have access to a larger pool of professional talent."[3]

---

[1] LinkedIn's Form 10-Q filed with the Securities and Exchange Commission on October 30, 2014, at page 22.
[2] *Id.*
[3] LinkedIn's Form 10-K filed with the Securities and Exchange Commission on February 13, 2014, at page 40.

4.    One of the ways in which LinkedIn grows it member base exponentially is by persuading its new and existing members to upload their external email address books (*e.g.*, Outlook, Gmail, AOL, etc.), and then persuading the user to allow LinkedIn to send contact requests to anyone who is already on LinkedIn and also to send email invitations to anyone who is not already a member on LinkedIn suggesting that they join.  This email contact upload system has been critical to the success and growth of LinkedIn.  According to LinkedIn co-founder Reid Hoffman, uploading members' external email contacts was one of the most important keys to LinkedIn's success in building its network:

> When we launched [LinkedIn] we had hoped that … the growth would pick up by itself.  … And we had a small trickle … but not an explosion of growth.  And I sat down with the team and said, if we don't solve this were dead. … And so I said, I have one good idea and we're going to try it and see if it works.   …. And the idea was … we said we would allow people to essentially upload their address book. … And that caused our growth curve to go from this to this [showing steep line with his hand].

Interview of Reid Hoffman on Bloomberg TV, May 9, 2013, available at: http://www.bloomberg.com/video/reid-hoffman-discusses-founding-linkedin-P6pT1HPQQaSQqcRZ7SPeZA.html

5.    This service – i.e., harvesting members' email addresses in order to send contact requests and new member invitations – is therefore extremely valuable to LinkedIn.  LinkedIn has a strong interest in persuading new and existing members to utilize this "contact uploader" service.

6.    Whenever a new user registers for LinkedIn, LinkedIn tries to persuade that new user to upload their external email address contacts.  Only a fraction of new registrants agree to allow LinkedIn to upload their address book and send emails to their contacts, however.   Accordingly, in order to continue its desired growth, LinkedIn needed a way to persuade existing users to upload their

1    email address books and then to allow LinkedIn to send invitations and contact

2    requests.

3              7.        In order to persuade existing LinkedIn members to upload their

4    email address books, LinkedIn began sending periodic emails to its existing

5    members indicating that certain of their LinkedIn contacts had utilized the contact

6    uploader service, as an enticement to persuade those users to do the same thing.

7    The emails typically show the name and photograph of four or more of the email

8    recipient's existing LinkedIn connections and invite the recipient to "join" those

9    connections by clicking a link to the contact uploader service page.  For example,

10   the following email invites the LinkedIn user to "Join … Branton (Brandy) Lea …

11   and 58 other connections who have already found people they know on LinkedIn."

12

13   

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.     If the email recipient clicks the "continue" button in order to "Join … Branton (Brandy) Lea," he is taken to LinkedIn's contact uploader page, where he is prompted to enter his email addresses and password information for his external email accounts in order to allow LinkedIn to upload his external email contacts.  If the email recipient complies, LinkedIn then asks the user to send an invitation to connect to all of the contacts who are already LinkedIn users, and to send email invitations to all contacts who are not already LinkedIn members asking them to join LinkedIn.

9.     The email sent by LinkedIn expressly indicates that Brandy Lea and the other contacts listed have utilized the contact uploader and, by using their names and likenesses on the solicitation email, LinkedIn implicitly suggests that they have endorsed the contact uploader service.  Given that his trusted connections have purportedly utilized and endorsed the service, the email recipient is enticed to "join … Brandy … and … other connections…" in utilizing the contact uploader service.

10.     The problem, however, is that Brandy Lea and the other LinkedIn members whose names and likenesses have been used to advertise the contact uploader service never gave permission for LinkedIn to use their names and likeness to promote this service.  In fact, they are never even made aware that LinkedIn has sent these emails using their names and likenesses.  Worse yet, upon information and belief, the vast majority of users whose names and likenesses have been misappropriated to promote the contact uploader service never actually used the contact uploader service that LinkedIn suggests the recipient should "join" them in using.   LinkedIn has misappropriated their names and likenesses without permission and used them in a misleading manner to promote its contact uploader service for LinkedIn's financial gain.

11.     Plaintiff brings this lawsuit on behalf of himself and all other LinkedIn members whose names and likenesses have been used by LinkedIn to

advertise the contact uploader service without their permission.  Plaintiff and other individuals similarly situated have been harmed by LinkedIn's misappropriation of their names, likeness and/or photographs to benefit Defendant.  Plaintiff and Class members each have a right of publicity under the common law.  LinkedIn reaped commercial benefits from the unauthorized use of their names, likeness and/or photographs, and Plaintiff and Class members received no compensation.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court has personal jurisdiction over LinkedIn because (i) a substantial portion of the wrongdoing alleged in this complaint took place in this State; and (ii) LinkedIn is authorized to do business here, has sufficient minimum contacts with this State, and/or otherwise intentionally avails itself of the markets in this State through the promotion, marketing, and sale of products and services in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  Under the Class Action Fairness Act of 2005 this Court has jurisdiction of this matter because the amount of damages sustained by the Class exceeds five million dollars.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because LinkedIn's corporate headquarters are located in the Northern District of California.  Venue is also proper under California Civil Procedure § 17203 as this is a court of competent jurisdiction.

## PARTIES

14.    Plaintiff is a United States citizen and resident and citizen of East Norriton, Pennsylvania.  Plaintiff is employed in sales and marketing.  He became a member of LinkedIn to connect with individuals with whom he may have, or be able to develop, business relationships.  Plaintiff never knowingly uploaded his contacts via the LinkedIn contact uploader service, nor did he agree to

allow LinkedIn to send emails using his name and likeness to promote the contact uploader service.

15. Defendant's principal executive offices are located at 2029 Stierlin Court, Mountain View, California. The company became incorporated in Delaware in March 2003 under the name LinkedIn, Ltd. and changed its name to LinkedIn Corporation in January 2005. Defendant, thus, is a citizen of California and Delaware. LinkedIn is a public company that began trading on the New York Stock Exchange in May 2011. LinkedIn's network is vast with approximately 300 million members in over 200 countries and territories. As of December 30, 2014, LinkedIn's market capitalization was $28.85 billion.

## ADDITIONAL FACTS

16. To become a member on LinkedIn, Plaintiff and the Class members were required to complete a form on the LinkedIn website, www.linkedin.com, that required them to enter their first name, last name, email address, and password for their LinkedIn account. There is no charge to become a LinkedIn member although LinkedIn sells a "Premium Subscription" for which users are billed monthly. Once these fields were entered, the member clicked "Join LinkedIn" button and an account was created. By clicking the "Join now" button, the member "agree[s] to LinkedIn's User Agreement, Privacy Policy and Cookie Policy."

17. LinkedIn's current Privacy Policy states:

**Sharing Information with Third Parties**
…
We will not disclose personal information that is not published to your profile or generated through engagement with our other services, such as Groups and Company Pages, except to carry out your instructions (for example, to process payment information) or unlesss [sic] we have your separate consent unless we have a good faith belief that disclosure is permitted by law or is reasonably necessary to: (1)

comply with a legal requirement or process, including, but not limited to, civil and criminal subpoenas, court orders or other compulsory disclosures; (2) enforce this Privacy Policy or our User Agreement; (3) respond to claims of a violation of the rights of third parties; (4) respond to Member service inquiries; or (5) protect the rights, property, or safety of LinkedIn, our Services, our Members, Visitors, or the public.

…

**Testimonials and Advertisements Placed through LinkedIn Ads**

If you provide any testimonials about our goods or services or place advertisements through the LinkedIn Ads, we may post those testimonials and examples of advertisements you place in connection with our promotion of these services to third parties. Testimonials and advertisements may include your name and other personal information that you have provided. For more information about LinkedIn Ads, please see the LinkedIn Ads Terms of Use.

18.     Upon joining LinkedIn, new members are invited to utilize LinkedIn's contact uploader.  Only a fraction of new users do so, however.

19.     Nothing in the User Agreement or Privacy Policy indicates that LinkedIn members consent to their name or profile picture being used in a manner to advertise or endorse LinkedIn's contact uploader service without permission.

20.     Since the contact uploader is one of the key ways in which LinkedIn grows its membership, LinkedIn is highly motivated to persuade its members to utilize the contact uploader.  LinkedIn does so by sending emails to its members indicating that many of the recipient's existing connections have utilized the contact uploader service and implicitly suggesting that those users have endorsed the contact uploader service because they "found people they already know on LinkedIn" by using it.  The email shows the names and pictures of four or more of the email recipient's connections, chosen by LinkedIn without their prior knowledge or consent, and suggests that the email recipient should "join" those

four plus a large number in using the contact uploader.   This is one example of one of these emails:



21.    LinkedIn sends many of these emails to existing users on a periodic basis, utilizing various names and photos of the recipients LinkedIn connections.    LinkedIn suggests that the recipient should "join" their contacts by clicking the "continue" button in the email.

22.    When the email recipient clicks "continue" to join the individuals whose names and photos were used in the email advertisement, he or she is taken to the contact uploader page, which instructs the user to "Get started by adding your email address" and email password, to allow LinkedIn to access the

1   users email address book.  The contact uploader will typically be preloaded with the
2   email address to which the solicitation email was sent.

3

4

5   

6

7

8

9

10

11

12

13       23.    LinkedIn then accesses the user's external email account to
14   locate not only the contacts saved in the user's address book but also every contact
15   to whom the user has ever sent an email and from whom the user has ever received
16   an email.    LinkedIn then checks its own member database to determine which of
17   those emails are associated with existing LinkedIn accounts and which are not.

18       24.    For email addresses associated with existing LinkedIn accounts,

19   

20

21

22

23

24

25

26

27

28

LinkedIn suggests that the user send requests to connect on LinkedIn.

25.    For emails addresses where no existing LinkedIn account was identified, on the next screen LinkedIn suggests that the user should "Stay in touch with your contacts that we found when you added your address book.  Invite them to LinkedIn so they can connect with you."



If the user agrees, LinkedIn sends up to three emails to each of those contacts indicating that the user has invited them to join LinkedIn.

26.    By suggesting that the email recipient's connections have utilized and endorsed the contact uploader service, the recipient is more likely to utilize it himself.  Thus, there is measurable value to LinkedIn in using the names and likenesses of members to endorse the service.   LinkedIn charges its own members around $10 per email to send emails to members with whom they are not connected.

27.    Moreover, there is measurable commercial value to LinkedIn because its primary sources of revenue are dependent on the size and growth of its membership base.   LinkedIn earns money through talent solutions (high-priced accounts for employment recruiters), marketing, and premium subscriptions. The

fastest growing area has been talent solutions, which brought in $275.9 million in the first quarter of 2014 alone.   All of these revenue sources depend on having a large user base.  One commentator estimated in 2013 that a single LinkedIn user has a value of $93.   George Anders, *A Twitter User Is Worth $110; Facebook's $98; LinkedIn's $93,* www. Forbes.com, 11/7/2013, available at: http://www.forbes.com/sites/georgeanders/2013/11/07/a-twitter-user-is-worth-110-facebooks-98-linkedins-93/ .

28.     There is a measurable economic benefit to LinkedIn to each new member it secures, and by using the names and likenesses of its existing members without their knowledge or permission to advertise the contact uploader service, LinkedIn has persuaded many members to upload their own contacts and send new member invitations, thereby exponentially growing its member base.

29.     LinkedIn credits these endorsements with its ability to grow virally with low marketing costs in its 2013 10-K:

> To date, our member base has grown virally based on members inviting other members to join our network. Through this word-of-mouth marketing, we have been able to build our brand with relatively low marketing costs. We use the quality of our own products and solutions as our most effective marketing tool, and word-of-mouth momentum continues to drive member awareness and trust worldwide.

30.     Endorsement of a product or service by a known friend or contact is the holy grail of advertising.   LinkedIn used the names and likenesses of its members, without their knowledge or consent, to promote the contact uploader in order to exponentially grow its member base.   Accordingly, these emails directly enable LinkedIn to increase its revenue through sales of premium memberships, advertising, and employment recruiting services.  LinkedIn members, like Plaintiff, did not intend to provide these commercial benefits to LinkedIn and have been harmed by LinkedIn's misappropriation of their identities and likenesses.

31.   Worse yet, upon information and believe, many, if not most, of the members whose names and likenesses LinkedIn misappropriates never actually used the contact uploader, even though the marketing emails say that they did.   For example, Plaintiff never knowingly utilized the contact uploader service, yet Plaintiff's contacts have received one or more emails using his name and likeness suggesting that his LinkedIn connections should "join" him in using the contact uploader service.

32.   Even aside from the measurable commercial benefit of the unauthorized emails, the unauthorized emails are harmful to Plaintiff's and Class members' reputations because they create the inference that Plaintiff and Class members have endorsed a LinkedIn service which carries with it serious privacy concerns.   Namely, the emails from LinkedIn indicate that Plaintiff and the Class members encourage the recipient to allow LinkedIn to access their private email account, and to download and retain in perpetuity email addresses and other information regarding every person with whom the member has ever had email contact.   Thus, even if the Class members had used the contact uploader service (and many, if not most, did not), LinkedIn's disclosure of that fact entails serious reputational concerns.

**CALIFORNIA LAW**

33.   Application of California law to all class members' claims is appropriate.

34.   LinkedIn's User Agreement includes a choice of law provision requiring the application of California law be applied to all disputes arising out of the User Agreement and LinkedIn's services.

**CLASS ACTION ALLEGATIONS**

35.   Plaintiff brings this lawsuit, both individually and as a class action, on behalf of similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

36.    Plaintiff  asserts  a  nationwide  class  under  California  law consisting of:

> All natural persons whose name, photograph, likenesses, or identity was used without permission in an email sent by LinkedIn to advertise LinkedIn's contact uploader service.

37.    Excluded from the proposed Class are the following individuals and/or entities:  the Court, all Court personnel involved in the handling of this case, as well as their immediate family members; LinkedIn and its subsidiaries, affiliates, officers  and  directors,  current  or  former  employees,  and  any  entity  in  which LinkedIn has a controlling interest; all individuals who timely elect to be excluded from  this  proceeding  using  the  correct  protocol  for  opting  out;  and  any  and  all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions.

38.    **Numerosity:**  Upon information and belief, the Class comprises millions of natural persons throughout the United States and is so numerous that the joinder of all members of the Class is impracticable.  While the exact number of individuals who have received endorsement emails sent without their consent can only be ascertained through discovery, the identity of Class members is readily determinable from LinkedIn's records.

39.    **Common Questions of Law and Fact Predominate:**  There are questions of law and fact common to the Class, which predominate over any individual issues, including:

a.    Whether Plaintiff and the Class consented to the use of their  names,  photographs,  likenesses,  or  identities  in endorsement emails sent by LinkedIn to existing LinkedIn members;

b.    Whether LinkedIn economically benefited or derived some other commercial benefit by using Plaintiff and the

1    Class member's names, photographs, likenesses or
2    identities in the endorsement emails;

3  c.    Whether Plaintiff and Class members were harmed by the
4        unauthorized use of their names, photographs, likenesses,
5        or identities in endorsement emails;

6  d.    Whether Plaintiff and Class members have sustained
7        monetary loss and the proper measure of that loss;

8  e.    What the monetary value of a non-celebrity endorsement
9        is when used in a social network endorsement email
10       invitation sent to a targeted audience;

11  f.    Whether LinkedIn's conduct as alleged herein violates
12       applicable laws; and

13  g.    Whether Plaintiff and Class members are entitled to
14       declaratory and injunctive relief.

15    40.    **Typicality:**  Plaintiff's claims are typical of the claims of the
16  members of the Class.  Plaintiff and all members of the Class have been similarly
17  affected by Defendant's common course of conduct.

18    41.    **Adequacy of Representation:**    Plaintiff will fairly and
19  adequately represent and protect the interest of the Class.  Plaintiff has retained
20  counsel with substantial experience in handling complex class action litigation.
21  Plaintiff and his counsel are committed to prosecuting this action vigorously on
22  behalf of the Class.

23    42.    **Superiority of Class Action:**  A class is superior to all other
24  available methods for the fair and efficient adjudication of this lawsuit, because
25  individual litigation of the claims of all class members is economically unfeasible
26  and procedurally impracticable.  While the aggregate damages sustained by the
27  Class is likely in the millions of dollars, the individual damages incurred by each
28  Class member resulting from LinkedIn's wrongful conduct are too small to warrant

the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

43. Given that LinkedIn engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

44. Plaintiff reserves the right to revise the above class definition based on facts adduced in discovery.

## FIRST CAUSE OF ACTION

### For Violations of California's Common Law Right of Publicity
### (On behalf Plaintiff and the Class)

45. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

46. California's Common Law Right of Publicity law protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

47. During the class period, LinkedIn knowingly used Plaintiff's name, photograph, or likeness to directly advertise LinkedIn's contact uploader service.

48. Plaintiff did not consent to LinkedIn's usage of his name, photograph, or likeness.

49. Plaintiff received no compensation or other consideration for LinkedIn's use thereof.

50. Plaintiff was harmed by LinkedIn's actions.

51. Plaintiff was deprived of the earnings from the use of his identity for which he is entitled.

52. The use of Plaintiff's name, photograph and likeness was directly connected to LinkedIn's commercial use.

53. LinkedIn's actions were a substantial factor in causing Plaintiff's harm.

54. LinkedIn's invitations and reminders that were endorsed with Plaintiff's name and photograph were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

55. Plaintiff and members of the Class seek injunctive relief, and other such preliminary and other equitable or declaratory relief, and other such preliminary and equitable or declaratory relief as may be appropriate.

56. Plaintiff and members of the Class seek a remedy as provided for by the California Common Law Right of Publicity in an amount equal to the greater of, the amount that LinkedIn avoided paying to the members of the class in marketing costs, the value that LinkedIn derives from use of its members' name and/or likeness, actual damages, any profits attributable to LinkedIn's illegal action before taking into account any actual damages, punitive damages, attorneys' fees and costs, and any other relief as may be appropriate.

1

2

### SECOND CAUSE OF ACTION

3

**Unlawful Business Acts and Practices in Violation of California Business
and Professions Code 17200, *et seq*.**
**(On behalf of Plaintiff and the Class against LinkedIn)**

4

5       57.    Plaintiff realleges and incorporates the above allegations by

6    reference as if fully set forth herein.

7       58.    Plaintiff asserts this claim for violation of California Business

8    and Professions Code § 17200 on behalf of himself and the members of the Class.

9       59.    California Business & Professions Code § 17200 prohibits, *inter*

10    *alia*, any "unlawful . . . business act or practice."  Defendant has violated § 17200's

11    prohibition against engaging in unlawful acts and practices by violating the

12    California Common Law Right of Publicity.

13       60.    Plaintiff has an interest in controlling the use of his name and

14    likeness.  In violation of Plaintiff's interest, LinkedIn exercised control over the use

15    of Plaintiff's name and likeness to exploit it for profit without seeking Plaintiff's

16    consent.    The unauthorized use of Plaintiff's name and likeness to further

17    LinkedIn's commercial interests constitutes "unfair" business acts or practices

18    within the meaning of California Business & Professions Code § 17200, *et seq*., in

19    that its conduct is substantially injurious to its members, offends public policy, and

20    is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct

21    outweighs any alleged benefits attributable to such conduct.

22       61.    There were reasonably available alternatives to further

23    LinkedIn's legitimate business interests other than the conduct described herein.

24       62.    LinkedIn's conduct caused and continues to cause substantial

25    injury to Plaintiff and other Class members.  Plaintiff has suffered injury in fact by,

26    *inter alia*, losing money and having his professional reputation diminished as a

27    result of LinkedIn's conduct.

28

63.     Plaintiff and the Class reserve the right to allege other violations of law which constitute additional unlawful business acts or practices. Such conduct is ongoing and continues to this date.

## **PRAYER FOR  RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1.     For preliminary and permanent injunctive relief enjoining LinkedIn, its agents, servants and employees, and all persons acting in concert with it, from engaging in, and continuing to engage in, the unlawful and wrongful business practices alleged above and that may yet be discovered in the prosecution of this action;

2.     For certification of the putative Class and appointment of Plaintiff as representatives of the Class and his counsel as Class counsel;

3.     For a declaration that LinkedIn's actions, as described herein, violate the claims outlined above;

4.     For restitution and disgorgement of all revenue by LinkedIn earned from the fraudulent and unlawful advertising practices described herein during the class period;

5.     For an accounting by LinkedIn for any and all profits derived by LinkedIn from its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

6.     For an award of statutory damages according to proof;

7.     For an award of general damages according to proof;

8.     For an award of special damages according to proof;

9.     For exemplary damages;

10.     An award to Plaintiff and his class counsel for reasonable litigation expenses and attorneys' fees;

11.    For an award of pre-judgment and post-judgment interest, to the extent allowable; and

12.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  January 6, 2015

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By: _____
JAMES C. SHAH (SBN 260435)
ROSE F. LUZON (SBN 221544)
One California Street, Suite 900
San Francisco, CA 94111
Phone: 415-429-5272
Fax: 866-300-7367
jshah@sfmslaw.com
rluzon@sfmslaw.com

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz
SAS@chimicles.com
Timothy N. Mathews
TNM@chimicles.com
Christina D. Saler
CDS@chimicles.com
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-850

*Counsel for Plaintiff Branton Lea*